UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SUPER 8 MOTELS, INC., | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION NO. 06-1644 (JCL) |
| SAI KRUPA VICTORIA, INC., SHILA A. PATEL, MANHAR Z. PATEL, and MITA S. NAROTHIAN, | : **OPINION** |
| Defendants. | : |

**LIFLAND, District Judge**

This matter comes before the Court upon the unopposed motion of Plaintiff Super 8 Motels, Inc. ("SMI" or "Plaintiff") for a preliminary injunction against Defendants Sai Krupa Victoria, Inc. ("Sai Krupa"), Shila A. Patel, Manhar Z. Patel, and Mita S. Narothian (collectively, "Defendants"). For the reasons set forth below, the Court will grant Plaintiff's motion for a preliminary injunction against Defendants.

## BACKGROUND

SMI is a South Dakota corporation with its principal place of business in Parsippany, New Jersey. (Complaint ("Compl.") ¶ 1.) Through its franchise system,

SMI markets, promotes, and provides services to its guest lodging franchisees throughout the United States. (Compl. ¶ 16.) In order to identify the origin of their guest lodging services, SMI allows its franchisees to utilize its trademarks and to promote the Super 8 brand name. (Id.) On April 5, 2006, SMI filed an eight-count complaint against Defendants, alleging violations of sections 32, 43(a), and 43(c) of the Lanham Act, 15 U.S.C. §§ 1114(1)(a), 1125(a), 1125(c); infringement of SMI's "marks";[1] breach of the Franchise Agreement; termination of the Franchise Agreement triggering liquidated damages or actual damages; breach of the Guaranty; and demanding enforcement of certain contractual terms which survive the termination of the Franchise Agreement.

According to the Complaint, on March 30, 2001, SMI entered into a twenty-year Franchise Agreement ("Agreement") with Sai Krupa for the operation of a 54-room guest lodging facility ("Facility") in Victoria, Texas. (Compl. ¶ 20; Ex. A.) Shila A. Patel, Manhar Z. Patel, and Mita S. Narothian executed a Guaranty, effective the date of the Agreement, which detailed their obligations to make payments and perform the obligations of Sai Krupa upon Sai Krupa's default in performance of the Agreement. (Compl. ¶¶ 34-35; Ex. B.) Under the Agreement, Sai Krupa was

---

[1] Various trade names, services marks, logos, and derivations thereof. (Compl. ¶¶ 12-14.)

required to make renovations to the Facility in order to bring it into compliance with standards, as defined in the Agreement, and to operate the Facility in compliance with "System Standards" and certain quality assurance requirements. (Compl. ¶¶ 22-23; Ex. A.) The Agreement granted SMI the right to conduct unlimited quality assurance inspections of the Facility so that SMI could determine whether the Facility was in compliance with those standards and quality assurance requirements. (Compl. ¶ 24; Ex. A.) Sai Krupa also had certain financial obligations under the Agreement, including periodic payments to SMI for royalties, service assessments, taxes, interest, reservation system user fees, annual conference fees, and other fees. (Compl. ¶ 25; Ex. A.)

Under section 11.2 of the Agreement, SMI could terminate the Agreement, with notice to Sai Krupa, for various reasons including failure to pay any amounts due under the Agreement, failure to cure any default within 30 days of notice from SMI, or receipt of two or more default notices within one year, regardless of any cure by Sai Krupa. (Compl. ¶ 29.) In the event of termination, Sai Krupa agreed that it would pay liquidated damages, cease using all of SMI's marks, and allow SMI to enter the Facility for the purpose of painting over or removing any interior or exterior signs bearing SMI's marks. (Compl. ¶¶ 30-32.)

On October 8, 2003, March 29, 2004, and July 8, 2004, SMI conducted quality

assurance inspections of the Facility, and on each of those dates determined that Sai Krupa had failed to meet its quality assurance obligations under the Agreement. (Compl. ¶¶ 38, 40-41; Exs. C, E, F.) On each occasion, SMI notified Sai Krupa that it had failed the inspection and gave Sai Krupa an opportunity to cure the failure. (Id.) After the inspection of October 8, 2003, SMI warned Sai Krupa that if the Facility did not receive a passing score on its next quality assurance inspection, SMI would issue a notice of default to Sai Krupa. (Compl. ¶ 38.) On March 24, 2004, SMI sent Sai Krupa a letter claiming that Sai Krupa was in breach of the Agreement for failure to pay certain fees. (Compl. ¶ 39; Ex. D.) In the letter of March 24, 2004, and after the inspections of March 29, 2004 and July 8, 2004, SMI informed Sai Krupa that if Sai Krupa did not cure its defaults, SMI could terminate the Agreement. (Compl. ¶¶ 39-41.) On January 25, 2005, SMI conducted another inspection of the Facility and assigned Sai Krupa a failing score. (Compl. ¶ 42.)

On April 28, 2005, SMI terminated the Agreement between SMI and Sai Krupa. (Compl. ¶ 43.) The termination notice was addressed to Mr. Arvind Patel with copies to Mita S. Narothian, Manhar Z. Patel, and Shila A. Patel, and explained that SMI had chosen to terminate the agreement due to Sai Krupa's failure to meet its financial obligations and satisfy the required quality assurance standards. (Compl. Ex. G.) The termination notice included a demand that Sai Krupa comply with its

post-termination obligations as defined in the Agreement. (Id.) These post-termination obligations included the removal of "all signage bearing any Marks" and a requirement that Sai Krupa "not identify the Facility with a confusingly similar mark or name." (Compl. Ex. A.)

On August 4, 2005, Plaintiff's attorney wrote Sai Krupa regarding the alleged use of SMI's marks by Sai Krupa despite its termination as a Super 8 System Facility. (Compl. ¶ 48; Ex. H.) This letter warned Sai Krupa that its continued use of the marks constituted willful trademark infringement, unfair competition, and dilution, and also breached Sai Krupa's contractual obligations under the Agreement. (Compl. Ex. H.) On October 27, 2005 and November 15, 2005, SMI sent additional letters to Sai Krupa threatening legal action if Sai Krupa did not discontinue its use of the Super 8 marks. (Compl. ¶ 48; Exs. I, J.) On November 11, 2005, SMI informed Sai Krupa that a contractor would remove the exterior signs bearing SMI's marks on November 18, 2005. (Compl. ¶ 49; Ex. K.) According to SMI, Sai Krupa refused to allow this contractor to remove the signs. (Compl. ¶ 49.)

Plaintiff alleges that Sai Krupa has continued to use SMI's marks in conjunction with the Facility. (Affidavit of Kathy Cox ("Cox Aff.") ¶ 3.) In particular, SMI claims that inspections conducted on April 5, 2006 and June 29, 2006 revealed that the Facility retains the Super 8 marks on external signs, and that

individuals answering the phone at the Facility continue to refer to the Facility as "Super 8." (Plaintiff's Motion for Preliminary Injunction ("Prelim.") Exs. B, C.)

Plaintiff further alleges in its brief supporting its motion for a preliminary injunction that public confusion has already occurred as a result of Defendants' infringement of Plaintiff's marks. Plaintiff specifically claims to have received a complaint from a dissatisfied customer who stayed at the Sai Krupa Facility on June 10, 2006. (Cox Aff. ¶ 4.) This customer reported that her room was dirty, with "2 inches of dirt all along the baseboard," the security lock was broken, and that "[t]he water could not be adjusted to lukewarm, only hot or cold." (Prelim. Ex. C.) In addition, the customer stated that she had "stayed in several Super 8's [sic] and they have been nice, clean, and comfortable, but she was very disappointed with this [hotel]." (Id.)

Defendants have not responded to Plaintiff's motion for a preliminary injunction. In their Answer, Defendants admit that SMI owns certain trademarks related to Super 8 Motels, that SMI owns a guest lodging franchising system, and that SMI identifies its franchisees through its marks and brand name. (Answer ("Ans.") ¶¶ 13-14, 16.) Defendants also admit that they entered into the Agreement and Guaranty with SMI for the operation of the Facility. (Ans. ¶¶ 20, 34-35.) Furthermore, Defendants admit that SMI conducted quality assurance inspections of

6

the Facility on October 8, 2003, March 29, 2004, July 8, 2004, and January 25, 2005, and that SMI assigned failing scores to each of these inspections.[2] (Ans. ¶¶ 38, 40-42.) Defendants further admit that SMI terminated Sai Krupa's franchise on April 28, 2005, although Defendants claim that Plaintiff lacked a good faith basis for doing so. (Ans. ¶ 43.) Finally, Defendants admit that they have continued using SMI's marks in conjunction with the Sai Krupa Facility despite receiving letters from Plaintiff demanding that Sai Krupa discontinue use of the marks. (Ans. ¶¶ 46, 48-49.)

## JURISDICTION

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1131, 1132, and 1338, 15 U.S.C. § 1121, and, with respect to certain claims, 28 U.S.C. § 1367. (Compl. ¶ 7; Ans. ¶ 7.) The amount in controversy exceeds $75,000. (Compl. ¶ 6; Ans. ¶ 6.) This Court has personal jurisdiction over Sai Krupa Victoria by virtue of section 17.6.3 of the Agreement. (Compl. ¶ 8; Ex. A.) This Court has personal jurisdiction over Shila A. Patel, Manhar Z. Patel, and Mita S. Narothian by virtue of the terms of the Guaranty. (Compl. ¶ 9; Ex. B.) Venue is proper in this District pursuant to section 17.6.3 of the Agreement. (Compl. ¶ 10; Ex. A.)

---

[2] Defendants deny the truth and accuracy of the facts contained in SMI's inspection reports which resulted in failing scores for Sai Krupa. (Ans. ¶¶ 38, 40-42.)

## STANDARDS OF REVIEW

The party seeking a preliminary injunction must show "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." Kos Pharmaceuticals, Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004); see also S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 374 (3d Cir. 1992), Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 191-92 (3d Cir. 1990). For the injunction to issue, all four of these factors must favor the party seeking relief. S & R, 968 F.2d at 374; Opticians, 920 F.2d at 192.

## DISCUSSION

A.  **Likelihood of Success on the Merits**

Plaintiff alleges violations of sections 32 and 43(a) of the Lanham Act.[3] To

---

[3] Plaintiff also includes a claim under section 43(c) of the Lanham Act, which requires that a mark be famous. 15 U.S.C. § 1125(c); see, e.g., Lawrence Music, Inc. v. Samick Music Corp., 2004 U.S. Dist. LEXIS 28217, at *36-*37 (D. Pa. 2004). Defendants deny that plaintiff's Super 8 marks are among the most famous in the United States. (Ans. ¶ 19.) A judge need not ignore those facts which the judge knows as a person, Kobell v. Suburban Lines, 731 F.2d 1076, 1103-04 (3d Cir. 1984) (Aldisert, J., concurring), and there is every reason to believe that the marks identifying Super 8 Motels are in fact famous. However, because the claims in this case under sections 32 and 43(a) of the Lanham Act are sufficient to support the issuance of a preliminary injunction, this Court need not decide whether the section 43(c) claim would also satisfy the preliminary

prove trademark infringement and unfair competition under these sections, "a plaintiff must establish that (1) the marks are valid and legally protectable; (2) the marks are owned by the plaintiff; and (3) the defendant's use of the marks to identify goods or services is likely to create confusion concerning the origin of the goods or services." Opticians, 920 F.2d at 192; Checkpoint Sys. v. Check Point Software Techs., Inc., 269 F.3d 270, 279 (3d Cir. 2001).  It is uncontested that SMI owns certain marks registered with the U.S. Patent and Trademark Office, including those with the logo for "Super 8 Motel," which SMI uses to identify its franchisees.  Appendix A of the Franchise Agreement defines these marks and states their registration numbers.  "[F]ederal registration of a trademark is prima facie evidence of the mark's validity, the registrant's ownership of the mark, and its exclusive right to use the mark in commerce." Lucent Info. Mgmt. v. Lucent Technologies., Inc., 186 F.3d 311, 315 (3d Cir. 1999); see 15 U.S.C. § 1115(a).  Therefore, SMI satisfies the first two prongs of the Opticians test.

In regards to the third prong of the test, "likelihood of confusion is inevitable, when . . . the identical mark is used concurrently by unrelated entities." Opticians, 920 F.2d at 195; see also Pappan Enterprises, Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800, 804 (3d Cir. 1998) (citing Opticians for the same

---

injunction test.

proposition). SMI has presented evidence that signs outside of Sai Krupa's motel continue to advertise the Facility as a "Super 8 Motel" and that staff at the Facility answer the phone as "Super 8." In addition, an individual who complained about an unpleasant experience as a guest of Sai Krupa's motel believed that the Facility was a Super 8 franchisee even though SMI had terminated its relationship with Sai Krupa over one year prior to her stay. Given this evidence, consumer confusion regarding the actual origin of the guest lodging services provided by Sai Krupa is not only likely, but is a virtual certainty.

In their Answer, Defendants do not dispute the fact that SMI terminated Sai Krupa's rights to use SMI's service marks and brand name, but instead challenge whether SMI had the right to terminate Sai Krupa's franchise. According to principles of both contract and trademark law, "a franchisor's right to terminate a franchisee exists independently of any claims the franchisee might have against the franchisor." S & R, 968 F.2d at 375. Although Sai Krupa may believe its franchise was wrongly terminated by SMI, "'a terminated franchisee's remedy for wrongful termination is an action for money damages, and not the continued unauthorized use of its franchisor's trademarks.'" Id. at 377 (quoting Burger King Corp. v. Hall, 770 F. Supp. 633, 638 (D. Fla. 1991)). The Agreement clearly permits SMI to perform unlimited quality assurance inspections of its franchisees,

assign scores to those inspections, and terminate the franchises of those who fail to maintain the required standards or make timely payments.  Therefore, Defendants may not claim a continued right to use SMI's marks,[4] and the Plaintiff has shown that its claim of trademark infringement would likely succeed at trial on the merits.

**B.   Irreparable Harm**

"'Irreparable injury is suffered where monetary damages are difficult to ascertain or are inadequate.'" A. O. Smith Corp. v. Federal Trade Commission, 530 F.2d 515, 525 (3d Cir. 1976) (quoting Danielson v. Local 275, Laborers Union, 479 F.2d 1033, 1037 (2d Cir. 1973)); see also Opticians, 920 F.2d at 195; Hohe v. Casey, 868 F.2d 69, 73 (3d Cir. 1989).  A plaintiff's inability to control the quality of services provided through the unauthorized use of its brand name and trademarks could easily result in a damaged reputation, for which money damages would not provide adequate compensation.  Times Mirror Magazines, Inc. v. Las Vegas Sports News L.L.C., 212 F.3d 157, 169 (3d Cir. 2000) ("[A] lack of control over the use of one's own mark amounts to irreparable harm."); Pappan, 143 F.3d at 805 ("Grounds for finding irreparable injury include loss of control of

---

[4] Under particular circumstances, a franchisee may continue using the marks by suing for partial breach while continuing to pay the amounts due under the franchise agreement.  S & R, 968 F.2d at 376.  The record contains no evidence of such circumstances in this case.

reputation, loss of trade, and loss of goodwill."); Fotomat Corp. v. Photo Drive-Thru, Inc., 425 F. Supp. 693, 711 (D.N.J. 1977) ("A plaintiff who has demonstrated service mark infringement and unfair competition faces the probability of lost trade and appropriation of its good will. The damages in such a case are by their very nature irreparable and not susceptible of adequate measurement."). As a result of these factors, "once the likelihood of confusion caused by trademark infringement has been established, the inescapable conclusion is that there was also an irreparable injury." Pappan, 143 F.3d at 805; S & R, 968 F.2d at 378. Accordingly, having concluded that consumers would easily confuse the Sai Krupa Facility with an actual SMI franchisee, the Court finds that the second factor is also satisfied.

### C. Granting Preliminary Relief Will Not Result in Even Greater Harm to the Nonmoving Party

The third preliminary injunction factor involves balancing the hardships between the two parties. Pappan, 143 F.3d at 805; S & R, 968 F.2d at 379; Opticians, 920 F.2d at 197. SMI has clearly demonstrated irreparable injury to its reputation and goodwill as a result of Sai Krupa's infringing use of SMI's trademarks. Sai Krupa, which has not responded to Plaintiff's motion for a preliminary injunction, has not presented any evidence of hardships which would

result from the granting of a preliminary injunction in favor of SMI.  Moreover, even if Sai Krupa had attempted to show a hardship which might result from a preliminary injunction requiring Sai Krupa to remove SMI's marks, the resulting damages to Sai Krupa would be easily calculable in money.  See, e.g., Pappan, 143 F.3d at 805-06 (finding that financial injuries to a terminated franchisee who had purchased "several months of logoed product" could be remedied by money damages).  Since no evidence of hardship to Sai Krupa has been presented, any possible harm to Sai Krupa could be remedied by money damages, and SMI would suffer irreparable harm from Sai Krupa's actions, the third preliminary injunction factor weighs heavily in favor of SMI.

**D**.     **Public Interest**

"Public interest can be defined in a number of ways, but in a trademark case, it is most often a synonym for the right of the public not to be deceived or defrauded."  Opticians, 920 F.2d at 197; see also Pappan, 143 F.3d at 807; S & R, 968 F.2d at 379.  In this case, it is undisputed that SMI terminated Sai Krupa's franchise and that Sai Krupa continues to use SMI's marks.  SMI has also submitted evidence from a consumer who was deceived by Sai Krupa's use of the marks, and who believed that she was staying at a motel approved and franchised by SMI.  Because the public interest is harmed by this type of deception, this

13

Court finds that SMI, the owner of the Super 8 Motel trademarks, has satisfied the fourth factor of the preliminary injunction test.

## **CONCLUSION**

Based on the foregoing discussion, the Court finds that Defendants are improperly using Plaintiff's marks and that each factor of the preliminary injunction test weighs in favor of Plaintiff Super 8 Motels, Inc. and against Defendants Sai Krupa Victoria, Inc., Shila A. Patel, Manhar Z. Patel, and Mita S. Narothian. Therefore, Plaintiff's motion for a preliminary injunction will be granted, and a preliminary injunction will issue in favor of Plaintiff.

\s\ John C. Lifland, U.S.D.J.

September 29, 2006